669 S.E.2d 348

**Deborah Ann STACY**

v.

**William Leslie STACY.**

**Record No. 0863–07–3.**

Court of Appeals of Virginia,
Richmond.

Dec. 9, 2008.

Robert J. Breimann (Street Law Firm, on briefs), Grundy, for appellant.

Gerald L. Gray (Gerald Gray Law Firm, on brief), Clintwood, for appellee.

Present: FELTON, C.J., ELDER, FRANK,
HUMPHREYS, CLEMENTS, KELSEY, McCLANAHAN,
HALEY, PETTY, BEALES and POWELL, JJ.

ELIZABETH A. McCLANAHAN, Judge.

## UPON A REHEARING EN BANC

Deborah Ann Stacy (wife) appeals the trial court's order terminating, pursuant to Code § 20–109(A), the obligation of William Leslie Stacy (husband) to make payments on a mortgage on the former marital home under the terms of the parties' property settlement agreement (PSA). Wife contends the court erred in finding the payments constituted spousal support under the PSA and, therefore, had no authority under Code § 20–109(A) to terminate husband's mortgage payment obligation. Wife also claims she is entitled under the PSA to an award of attorney's fees and costs for this appeal and the proceedings below.

A panel majority of this Court affirmed the decision of the trial court. We granted a petition for rehearing *en banc* and stayed the mandate of the panel decision. Upon rehearing *en banc*, we reverse the trial court and remand for the trial court's consideration of wife's request for attorney's fees and costs under the PSA.

## I.  BACKGROUND

Husband and wife divorced in 2001 after entering into a PSA, wherein the parties expressly "waive[d]" spousal support. The parties also agreed that wife would receive the marital home and husband would be solely responsible for payment of the "remaining mortgage indebtedness" on the home. The trial court approved the parties' PSA and incorporated it by reference into the final decree of divorce. Upon entry of the final decree, husband, pursuant to the PSA, transferred his interest in the marital home to wife and "refinanced the [b]ank mortgage obligation into a [p]romissory [n]ote solely in his name."[1]

---

1. Parties' written statement of facts, paragraph 4, filed pursuant to Rule 5A:8.

In 2006, husband, citing Code § 20–109, filed a petition seeking to terminate his mortgage payment obligation under the PSA based on the claim wife had been cohabitating with an individual in a relationship analogous to marriage for several years. Under Code § 20–109(A), spousal support is subject to termination under certain circumstances, including the payee's cohabitation analogous to marriage for a year or more.[2] In response, wife stipulated to her involvement in the alleged relationship for more than a year. She argued, however, that under the express terms of the PSA husband's mortgage payment obligation was not spousal support; rather, it was part of the parties' equitable distribution, thus negating Code § 20–109(A)'s applicability and the court's authority to terminate the obligation.

■ Neither party argued that the PSA was ambiguous, and the trial court found the PSA was unambiguous.[3] The court then "classifie[d]" husband's third party mortgage payments as spousal support, and thereby terminated the obligation to the bank (a non-party) pursuant to Code § 20–109(A) on cohabitation grounds. In doing so, the court relied on

---

2. Code § 20–109(A) provides as follows:

   Upon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper. Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court shall terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would be unconscionable. The provisions of this subsection shall apply to all orders and decrees for spousal support, regardless of the date of the suit for initial setting of support, the date of entry of any such order or decree, or the date of any petition for modification of support.

3. "A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." *Plunkett v. Plunkett,* 271 Va. 162, 168, 624 S.E.2d 39, 42 (2006) (citations and internal quotation marks omitted).

language in paragraph 9 of the PSA in which the parties stipulated that, while husband's mortgage payments "were not direct support payments being made to wife," they were "in the nature of support," and therefore "non-dischargeable" by husband in any bankruptcy proceeding.[4]

## II. ANALYSIS

### A. *Termination of Husband's Mortgage Payment Obligation*

■ Wife argues the trial court erred in "re-writ[ing]" the parties' PSA when it characterized husband's third party mortgage payments as "spousal support," contrary to the express terms of the PSA, and in terminating the obligation under Code § 20–109(A) based on that erroneous interpretation. We agree.

■ The trial court's interpretation of the PSA is an issue of law that we review *de novo*. *Palmer & Palmer Co., LLC v. Waterfront Marine Constr., Inc.*, 276 Va. 285, 289, 662 S.E.2d 77, 80 (2008) (citation omitted); *Henderlite v. Henderlite*, 3 Va.App. 539, 541, 351 S.E.2d 913, 913–14 (1987); *see Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002) (an appellate court has " 'an equal opportunity to consider the words of the contract within the four corners of the instrument itself' ") (quoting *Wilson v. Holyfield*, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984)).

■ Code § 20–109(A) is subject to the statutory proviso, under subsection C, that no order "shall be entered except in accordance with [the PSA]." Code § 20–109(C). "[T]his requires the trial judge to examine the parties' agreement to ascertain whether the relief sought by the moving party is encompassed within the terms of the agreement." *Rutledge v. Rutledge*, 45 Va.App. 56, 63, 608 S.E.2d 504, 508 (2005) (citing

---

4. As explained, *infra*, under bankruptcy law, an obligation "in the nature of support" benefiting an ex-spouse is non-dischargeable; however, it may be deemed as such even if the obligation is not found to be spousal support under state law.

*White v. White*, 257 Va. 139, 144–45, 509 S.E.2d 323, 326 (1999)). Accordingly, a PSA is governed by the same rules of construction applied to other contracts. *Plunkett v. Plunkett*, 271 Va. 162, 166, 624 S.E.2d 39, 41 (2006); *White*, 257 Va. at 144, 509 S.E.2d at 325; *Irwin v. Irwin*, 47 Va.App. 287, 292–93, 623 S.E.2d 438, 441 (2005). When applying these rules, the court's function is to

> "construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

*Irwin*, 47 Va.App. at 293, 623 S.E.2d at 441 (quoting *Wilson*, 227 Va. at 187, 313 S.E.2d at 398). That is, "[w]hen a contract is clear and unambiguous, it is the court's duty to interpret the contract, as written." *Palmer & Palmer Co.*, 276 Va. at 289, 662 S.E.2d at 80 (citation omitted); *see PMA Capital Ins. Co. v. U.S. Airways, Inc.*, 271 Va. 352, 360–61, 626 S.E.2d 369, 374 (2006) (reversing trial court on contract interpretation after concluding the court "essentially re-wrote the [contract] and made a new contract" in derogation of its "plain language").

Applying these principles, our Supreme Court and this Court have rejected arguments that mortgage payments constituted spousal support under the respective settlement agreements at issue. In *White*, 257 Va. 139, 509 S.E.2d 323, an agreement of the husband to pay the mortgage on the marital home conveyed to the wife was ratified by the trial court and incorporated into the parties' final divorce decree. The decree stated that " '[Mr. White] entered into [the] agreement ... with respect to maintenance and support.' " *Id.* at 142, 509 S.E.2d at 324. Three years after the divorce, Ms. White sold the home, at which time the balance due on the mortgage was paid from the proceeds of the sale. Though Mr. White made the payments to the mortgagee bank as called for under the agreement until the time of sale of the home, Ms. White filed a complaint seeking an order requiring

Mr. White to show cause why he should not be held in contempt for failure to then make payments to her in the amount of the mortgage payments. *Id.* The trial court ruled in Ms. White's favor on her petition, holding that the agreement to pay the mortgage constituted a lump sum award to her payable in installments as "maintenance and support" under the terms of the divorce decree. *Id.* at 143, 509 S.E.2d at 325.

The Supreme Court reversed the trial court's decision, ruling as follows:

> The agreement clearly obligates Mr. White to pay the $30,000 mortgage on the house ... to [the] Bank in 120 monthly installments. It contains no provision for Mr. White to make any payments to Mrs. White. Moreover, and of particular significance in this case, nothing within the express terms of the agreement evinces any intent of the parties that Mr. White's obligation would survive the satisfaction of the mortgage debt, regardless of the manner in which that debt was extinguished.

> Accordingly, we hold that the agreement obligated Mr. White to make payments on the mortgage on the marital home so long as that debt existed, but did not obligate him to pay a fixed sum to the wife in installments with interest, as she alleged in her bill of complaint and as the trial court subsequently found in the show cause hearing.

*Id.* at 145, 509 S.E.2d at 326. The Court concluded that "[t]he language of the final decree of divorce referencing the agreement as 'an agreement ... with respect to maintenance and support' could not, and did not, alter *the intent of the parties as expressed in the agreement.*" *Id.* (emphasis added).

Similarly, in *Owney v. Owney*, 8 Va.App. 255, 260, 379 S.E.2d 745, 748 (1989), this Court held that the trial court erred in "characteriz[ing]" as "spousal support" the husband's obligation, under the parties' property settlement agreement, to make mortgage payments on the marital home. Like the instant case, the parties' agreement in *Owney* required that husband convey his interest in the marital residence to wife

and that he assume the mortgage payments on the first deed of trust held by the mortgagee bank. The agreement also "specifically release[d] the husband and wife 'of any claim either might have for alimony or support.'" *Id.* After husband defaulted on the mortgage, wife paid off the obligation and petitioned the trial court to require husband to make the payments to her as spousal support under the parties' PSA. The trial court granted wife's petition as requested. *Id.* at 257–58, 379 S.E.2d at 747. On appeal, we reversed the trial court and remanded the case for further consideration of husband's continuing liability on the mortgage obligation, if any. In doing so, however, we concluded that the trial court's characterization of husband's third party debt obligation as spousal support, and its award of those debt payments to wife as support, "controvene[d] the plain language of the [parties'] agreement." *Id.* at 260, 379 S.E.2d at 748.

Here, the parties expressly waived spousal support in paragraph 8 of the PSA, which provides in its entirety as follows: "8. SPOUSAL SUPPORT: Each party hereby waives any present or future right to receive any support or maintenance from the other."

With regard to husband's mortgage obligation, paragraph 4 of the PSA (under the heading "DEBTS") specifically provides, in relevant part, that husband "shall be responsible for the payment of ... [t]he remaining mortgage indebtedness [on the marital residence]"; husband "shall be solely responsible" for this debt; and husband "shall indemnify and hold the [w]ife harmless from any and all ... claims or demands, including, but not limited to, attorney's fees" regarding this debt. In conjunction with these provisions, husband further agreed, in paragraph 19, to convey to wife all of his rights, title and interest in the marital residence. Accordingly, upon entry of the final divorce decree, which incorporated the PSA, husband deeded his undivided interest in the marital residence to wife, and then refinanced the bank's mortgage on the property with a promissory note solely in his name.

Consistent with paragraph 4's indemnification and hold harmless provisions in favor of wife regarding husband's assumption of the mortgage debt, paragraph 5 (under the heading "CREDIT OF PARTIES") provides, in part, that "[n]either party shall at any time hereafter . . . contract any debts, charges or liabilities of any nature whatsoever for which the other party shall or may become liable to answer." Furthermore, "[e]ach party covenants and agrees to save and keep the other party free and harmless from any and all debts, charges and liabilities which may hereinafter be incurred or contracted by such party."

Challenging the import of these plainly stated provisions, husband contends the language in paragraph 9[5] of the PSA characterizing his mortgage payment obligation as "in the nature of support" renders "ineffective" the parties' express waiver of spousal support in paragraph 8, and makes the obligation subject to termination under Code § 20–109(A). Settled principles of contract construction, however, dictate that such was not the parties' contractual intent.

---

**5.** Paragraph 9 (under the heading "PAYMENTS IN THE NATURE OF SUPPORT") provides, in its entirety, as follows:

Notwithstanding the provision set forth in [p]aragraph 8, above, the [h]usband agrees that all of the payments that he is assuming by virtue of this [a]greement are being made to benefit the [w]ife, and are, therefore, payments being made "in the nature of support" on the [w]ife's behalf. *Although they are not direct support payments being made to the [w]ife, the parties acknowledge and agree that they are, nevertheless, of the type and nature of payment which would be deemed to be non-dischargeable by the [h]usband in any proceeding, because of their direct benefit to the [w]ife.* Should the [h]usband ever attempt to discharge these obligations in such a way as would result in them being imposed upon the [w]ife, not only does he agree that he shall continue to be liable for them to the creditor, but he also acknowledges that the [c]ourt may directly impose any such discharged obligations upon him as support, whether spousal or child, regardless of any prior waivers, and even if to do so exceeds any presumptive amounts established by the legislature, to the [w]ife directly, and also that he will be responsible for the [w]ife's attorney fees and [c]ourt costs related to any proceeding which may arise relative to the matters contained in these [p]aragraphs.
(Emphasis added.)

In giving effect to the intention of the parties "as expressed by them in the words they have used," *Irwin,* 47 Va.App. at 293, 623 S.E.2d at 441 (citation and internal quotation marks omitted), we are not to treat any word or clause in the PSA " 'as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly,' " *Dominion Sav. Bank, FSB v. Costello,* 257 Va. 413, 417, 512 S.E.2d 564, 567 (1999) (quoting *D.C. McClain, Inc. v. Arlington Co.,* 249 Va. 131, 135–36, 452 S.E.2d 659, 662 (1995)). At the same time, we must construe the contract as a whole. *Quadros & Assocs., P.C. v. City of Hampton,* 268 Va. 50, 55, 597 S.E.2d 90, 93 (2004) (citations omitted). In other words, "the meaning of a contract 'is to be gathered from all its associated parts assembled as a unitary expression of the agreement of the parties.' " *Sully Station II Community Ass'n, Inc. v. Dye,* 259 Va. 282, 284, 525 S.E.2d 555, 556 (2000) (quoting *Berry v. Klinger,* 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)); *see Virginian Ry. Co. v. Hood,* 152 Va. 254, 258, 146 S.E. 284, 285 (1929) (explaining that a contract's provisions "are to be harmonized when possible" and "effect . . . given to every stipulation when it can reasonably be done").

When all of the provisions of the PSA are considered as a whole and read in context, with reasonable meaning given to each provision, it is evident that paragraph 9 was written with a certainty intended to accomplish one purpose only: to ensure, to the extent possible, that should husband ever elect in the future to file a petition for bankruptcy, the mortgage obligation being assumed by him would not be dischargeable in the bankruptcy proceeding. This prohibition was made possible because, under bankruptcy law, an obligation found to be "in the nature of support" is a nondischargeable debt under 11 U.S.C. § 523(a)(5). *See, e.g., Brunson v. Austin (In re Austin),* 271 B.R. 97 (Bankr.E.D.Va. 2001) (explaining multi-factor test for determining whether a particular obligation is "in the nature of support" under 11 U.S.C. § 523(a)(5)). Therefore, when placing this prohibition in paragraph 9 immediately after the parties' express and

definitive waiver of any right to demand or receive spousal support from the other, the parties surely had no intent to render paragraph 8 meaningless and create an obligation of spousal support. As used in the PSA, the phrase "in the nature of support" was technical language from the Bankruptcy Code and limited to its bankruptcy context. Husband's third party debt obligation was thus never spousal support as contemplated by Code § 20–109. To hold otherwise would amount to "alter[ing] the intent of the parties as expressed in [their] agreement." *White*, 257 Va. at 145, 509 S.E.2d at 326. The obligation can still be viewed, however, as "in the nature of support" so as to render it non-dischargeable under bankruptcy law. " '[A] debt could be in the "nature of support" under [11 U.S.C. § ]523(a)(5) even though it would not legally qualify as alimony or support under state law.' " *In re Gianakas*, 917 F.2d 759, 762 (3rd Cir.1990) (quoting *In re Yeates*, 807 F.2d 874, 878 (10th Cir.1986)).

The trial court thus erred in treating husband's mortgage payment obligation as spousal support under Code § 20–109, and terminating it on cohabitation grounds. Under the plainly stated terms of the parties' PSA, it was an unconditional third party obligation incurred by husband as part of the parties' equitable distribution—with spousal support having been expressly waived. As such, the trial court had no authority to terminate the obligation.

B. *Attorney's Fees and Costs Pursuant to the PSA*

Wife also argues she is entitled under the PSA to an award of attorney's fees and costs for this appeal and the proceedings below. Paragraph 24 of the PSA states: "The parties agree that if one party incurs any expenses in the enforcement of any of the provisions of this [a]greement, the other shall be responsible for, and shall pay forthwith, any and all expenses incurred, including, but not limited to, reasonable attorney's fees." In ruling in husband's favor, the trial court did not award attorney's fees to wife. Because we reverse the judgment of the trial court and rule in wife's favor, we remand the case to the trial court for consideration of wife's request

for attorney's fees and costs under the PSA. *See Rutledge*, 45 Va.App. at 62, 608 S.E.2d at 507 (contractual provisions for attorney fees in PSA are enforceable in same manner as any other terms); *Sanford v. Sanford*, 19 Va.App. 241, 249–50, 450 S.E.2d 185, 190 (1994) (remanding case for award of attorney fees to wife under PSA for enforcement action); *see generally Ulloa v. QSP, Inc.*, 271 Va. 72, 81–83, 624 S.E.2d 43, 49–50 (2006) (analyzing award of attorney fees under employment contract).

## III.  CONCLUSION

For these reasons, we reverse the trial court's order terminating husband's mortgage payment obligation and remand for consideration of wife's request for attorney's fees and costs for this appeal and the proceedings below pursuant to paragraph 24 of the PSA.

*Reversed and remanded.*